1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11  JAMES LAWRENCE, MARILYN
    MELLIES,

12              Plaintiffs,

13       v.

14  CENLAR F.S.B., CITIBANK, N.A., and
    DOES 1 through 10,

15

16              Defendants.

17

Case No. 1:22-cv-01627-JLT-CDB

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT
CENLAR'S MOTION TO DISMISS AND
GRANTING IN PART AND DENYING IN
PART DEFENDANT CITIBANK'S MOTION
TO DISMISS

(Docs. 10, 13.)

18                    **I.    INTRODUCTION**

19          This case concerns the foreclosure of the residence owned by James Lawrence and

20  Marilyn Mellies' in Ridgecrest, California.  Before the Court are motions to dismiss brought by

21  Citibank, N.A. ("Citibank") and Cenlar FSB ("Cenlar") (collectively "Defendants").  (Docs. 10,

22  13.)  For the reasons set forth below, the Court grants in part and denies in part Citibank's motion

23  to dismiss (Doc. 10), and grants in part and denies in part Cenlar's motion to dismiss (Doc. 13).[1]

24  ///

25

26  ───────────────

27  [1]  The Court's standing order provides that "[b]efore filing a motion in a case in which the parties are represented by
    counsel, counsel shall engage in a pre-filing meet and confer to discuss thoroughly the substance of the contemplated
    motion and any potential resolution . . . In the notice of motion, counsel for the moving party shall certify that meet
28  and confer efforts have been exhausted and include a summary of meet and confer efforts."  All future motions must
    satisfy the meet-and-confer requirements or the motions will be stricken.

                                    1

## II.    BACKGROUND

On November 7, 2022, Plaintiffs filed this action against Defendants in the Superior Court of the State of California, Kern County, Case No. BCV-22-102977.  (Doc. 1-1 at 2.)  Defendants removed this action to this Court on December 20, 2022, based on federal question jurisdiction.  (Doc. 1-1 at 3–4.)

In August 2007, Plaintiffs obtained a mortgage loan on the real property located at 1039 W. Beston Ave., Ridgecrest, CA 93555 for $100,000 by deed of trust from Citibank.  (Doc. 1-4, ¶ 10.)  On May 5, 2022, Defendants recorded a notice of default and election to sell under a deed of trust.  (Doc. 1-4, ¶ 11.)  The notice of default included a declaration from Cenlar dated March 16, 2022, and signed on March 21, 2022, which detailed Defendant Cenlar's assertion that it unsuccessfully attempted to contact Plaintiffs by mail and telephone.  (Doc. 1-4 at 25–26.)  A notice of trustee's sale was recorded on August 3, 2022.  (Doc. 1-4, ¶ 12.)  Plaintiffs contend the property was unlawfully sold on September 7, 2022.  (Doc. 1-4, ¶ 12.)

## III.    JUDICIAL NOTICE

Defendants request this Court take judicial notice of three documents: (1) a deed of trust recorded on August 7, 2007, in the Kern County Recorder's Office; (2) a substitution of trustee recorded on May 5, 2022, in the Kern County Recorder's Office; and (3) a trustee's deed upon sale recorded on October 28, 2022, in the Kern County Recorder's Office.  (Docs. 11, 14.)  The deed of trust and the trustee's deed upon sale are also attached and incorporated in Plaintiffs' complaint.  (Doc. 1-4 at 15–20; 1-3 at 2–4.)

"[C]ourts do not take judicial notice of documents, they take judicial notice of facts.  The existence of a document could be such a fact, but only if the other requirements of Rule 201 are met."  *Cruz v. Specialized Loan Servicing, LLC*, No. SACV 22-01610-CJC-JDEX, 2022 WL 18228277, at *2 (C.D. Cal. Oct. 14, 2022) (internal citation and quotations omitted).  Generally, judicial notice may be taken of recorded instruments because they are public records whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201; *see Perez v. Am. Home Mortg. Servicing, Inc.*, No. 12-cv-009323-WHA, 2012 WL 1413300, at *2 (N.D. Cal. Apr. 23, 2012) (taking judicial notice of a deed of trust, notice of default, assignment of deed of trust, and

1    substitution of trustee recorded with the Alameda County Recorder's Office).  However, a court

2    may not take judicial notice of a fact within a public record that is "subject to reasonable dispute."

3    *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

4           Under Rule 201, the Court may take judicial notice that the substitution of trustee were

5    recorded with the Kern County Recorder's Office on the dates indicated by the receipt stamp.

6    However, the Court's judicial notice "extends only to the existence of these documents and not to

7    their substance, which may contain disputed or irrelevant facts."  *Givens v. Newsom*, 629 F. Supp.

8    3d 1020, 1024 (E.D. Cal. 2022).  Accordingly, the Court grants judicial notice limited to the point

9    that the three documents exist and were publicly filed in the Kern County Recorder's Office on

10   the respective dates reflected on each document. Because Plaintiffs attached the deed of trust and

11   the trustee's deed upon sale as exhibits to the complaint, they have incorporated by reference

12   certain facts contained in the documents, rendering Defendants' requests for judicial notice

13   unnecessary.  See Lee, 250 F.3d at 688 ("[A] court may consider material which is properly

14   submitted as part of the complaint on a motion to dismiss without converting the motion to

15   dismiss into a motion for summary judgment.")

16                                **IV.    LEGAL STANDARD**

17          Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on

18   the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R.

19   Civ. P. 12(b)(6).  A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the

20   complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In deciding a motion to dismiss,

21   "all allegations of material fact are taken as true and construed in the light most favorable to the

22   non-moving party."  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir.

23   2020).  In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be

24   accepted as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

25          A claim is facially plausible "when the plaintiff pleads factual content that allows the

26   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

27   *Iqbal*, 556 U.S. at 678.  A complaint that offers mere "labels and conclusions" or "a formulaic

28   recitation of the elements of a cause of action will not do."  *Id.*; *see also Moss v. U.S. Secret Serv.*,

1   572 F.3d 962, 969 (9th Cir. 2009).  "Dismissal is proper only where there is no cognizable legal

2   theory or an absence of sufficient facts alleged to support a cognizable legal theory."  *Navarro*,

3   250 F.3d at 732.

4   　　　If the court dismisses the complaint, it "should grant leave to amend even if no request to

5   amend the pleading was made, unless it determines that the pleading could not possibly be cured

6   by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In making

7   this determination, the court should consider factors such as "the presence or absence of undue

8   delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments,

9   undue prejudice to the opposing party and futility of the proposed amendment."  *Moore v.*

10  *Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

11  **V.    DISCUSSION**

12  　　　In their complaint, Plaintiffs allege eight causes of action: violations of the California

13  Homeowner Bill of Rights under California Civil Code §§ 2923.5, 2924(a)(1), and 2924.9;

14  negligence; wrongful foreclosure; interpleader; violation of California's Unfair Competition Law

15  under California Business and Professions Code § 17200; and cancellation of instruments.

16  **A.    Count One: Violation of California Civil Code § 2923.5**

17  　　　Plaintiffs allege that Defendants violated California Civil Code § 2923.5(a)(2), which

18  requires a "mortgagee, beneficiary or authorized agent" to "contact the borrower in person or by

19  telephone in order to assess the borrower's financial situation and explore options for the

20  borrower to avoid foreclosure" prior to recording a notice of default.  Defendants argue that

21  Plaintiffs' first cause of action should be dismissed for two reasons: (1) Plaintiffs fail to state a

22  cognizable claim because Cenlar's March 2022 declaration confirms that Defendants fully

23  complied with § 2923.5 and (2) Plaintiffs' claim fails as a matter of law because the Property has

24  already been sold and the only remedy for a violation of § 2923.5 is postponement of an

25  impending foreclosure.  (Docs. 10-1 at 12–31; 13-1 at 8–9.)

26  　　　**1.  March 2022 Declaration**

27  　　　Plaintiffs allege that Defendants violated § 2923.5(a)(2), because despite residing at the

28  property when the notice of default was recorded on May 5, 2022, they "received no mail or

4

messages" from Defendants to assess the financial situation and explore options to avoid foreclosure. (Doc. 1-4, ¶ 19.)  In response, Defendants point to the March 2022 declaration—which was both recorded with the notice of default on May 5, 2022, and attached as an exhibit to Plaintiffs' complaint—on which the assigned mortgage servicer attests, by checking a line next to pre-prepared language, that she took certain steps to contact Plaintiffs in conformance with § 2923.5. (Doc. 1-2 at 30–31.)  Defendants argue that Plaintiffs fail to state a claim under § 2923.5(a)(2) because Plaintiffs' allegations that they did not receive proper notice is contradicted by the recorded March 2022 declaration.

Defendant Citibank cites to *Wyman v. First Am. Title Ins. Co.*, No. C-16-07079-WHA, 2017 WL 1508864, at *3 (N.D. Cal. Apr. 27, 2017), and *Major v. Wells Fargo Bank*, No. 14-CV-998-LAB-RBB, 2014 WL 4103936, at *3 (S.D. Cal. Aug. 18, 2014), to support its proposition that a declaration recorded with a notice of default is sufficient to satisfy a defendant's obligations under § 2923.5. (Doc. 10-1 at 13.)  The *Major* court only found the declaration to be sufficient because the plaintiff did not allege sufficient facts to indicate any lack of communication and only made conclusory allegations that the declaration was false. *See Major*, 2014 WL 4103936, at *3. *Wyman* held that, only in light of plaintiff's inability to allege a specific violation regarding the notice of default and the declaration, the declaration was prima facie evidence of an attempt to contact plaintiffs. *See Wyman*, 2017 WL 1508864, at *3.  Plaintiffs have specifically alleged in their complaint that they "received no mail or messages" while indirectly challenging the content—not the existence—of the declaration.

The Court finds Defendants' arguments in favor of dismissal of Plaintiffs' first cause of action unavailing at the pleading stage because the arguments are rooted entirely on a factual challenge. *See Lee*, 250 F.3d at 688 ("Factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6).").  Defendants allege that the recorded March 2022 declaration indicates compliance with § 2935.5(a)(5), however Plaintiffs allege that Defendants did not make any contact in violation of § 2935.5(a)(5). (Docs. 10-1 at 12–13; 13-1 at 8–9; 1-4 at ¶ 19.)  The Court cannot resolve such a factual disagreement at the pleadings stage. *See Barrionuevo v. Chase Bank, N.A.*, 885 F. Supp. 2d 964, 977 (N.D. Cal.

2012) ("When a plaintiff's allegations dispute the validity of defendant's declaration of compliance in a Notice of Default . . . the plaintiff has plead[ed] enough facts to state a claim to relief that is plausible on its face."). Plaintiffs have plausibly alleged that Defendants did not contact them prior to recording the notice of default to assess Plaintiffs' financial situation and explore options to avoid foreclosure in violation of § 2923.5(a)(2). Therefore, Plaintiffs have properly pled a violation of § 2923.5(a)(2).

## 2. Relief Under § 2923.5

Defendants argue that even if Plaintiffs state a cognizable claim under § 2923.5, Plaintiffs have no available relief because the only remedy for a violation of § 2923.5 is postponement of an impending foreclosure. (Docs. 10-1 at 12; 13-1 at 9–10.) Because it is undisputed the Property was already sold in a foreclosure sale on September 7, 2022, Defendants argue that Plaintiffs have failed to state a claim upon which any relief can be granted. (Docs. 1-4 at ¶ 12; 10-1 at 12; 13-1 at 9–10.) The Court agrees. *See Mabry v. Superior Ct.*, 185 Cal. App. 4th 208, 214, 235 (2010) (explaining that the only remedy available under § 2923.5 is "a postponement of an impending foreclosure to permit the lender to comply with" § 2923.5); *Herrejon v. Ocwen Loan Servicing LLC*, 990 F. Supp. 2d 1186, 1210 (E.D. Cal. Nov. 1, 2013) (noting "if the foreclosure sale has occurred, section 2923.5 provides plaintiffs no remedy"). Defendants' motions to dismiss Plaintiffs' first cause of action are **GRANTED**. Because there is no way to cure this defect in an amended complaint, this dismissal is without leave to amend.

**B.    Count Two: Violation of California Civil Code § 2924(a)(1)**

Count Two is based on a violation of California Civil Code § 2924(a)(1). Plaintiffs indicated in their oppositions that they have abandoned this cause of action. (Docs. 18-1 at 1; 19-1 at 1.) The motion to dismiss Count Two is **GRANTED** without leave to amend.

**C.    Count Three: Violation of California Civil Code § 2924.9**

Plaintiffs' allege Defendants' violated California Civil Code § 2924.9, which requires that a mortgage servicer send the borrower a written communication containing specific information regarding foreclosure prevention alternatives within five business days after recording a notice of default. The remedy for § 2924.9 is governed by § 2924.12, which states: "After a trustee's deed

6

1   upon sale has been recorded, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized

2   agent shall be liable to a borrower for actual economic damages . . . resulting from a *material*

3   *violation* of . . . section 2924.9." Cal. Civ. Code 2924.12(b) (emphasis added).

4        California Civil Code § 2924.12(b) provides a remedy only for a "material violation" of

5   § 2924.9. "A material violation occurs where the violation: (1) affects the borrower's loan

6   obligations, (2) disrupts the borrower's loan modification process, or (3) causes the borrower to

7   suffer harm that he would not have otherwise suffered related to his right to be considered for loss

8   mitigation options." *Mountjoy v. Seterus, Inc.*, No. 2:15-CV-02204-DJC-DB, 2023 WL 4086763,

9   at *11 (E.D. Cal. June 20, 2023). Though some district courts within the Ninth Circuit "have held

10  that materiality is a question that cannot be resolved at the pleading stage, Plaintiff still must

11  plead something to satisfy 2924.12's materiality requirement." *Galvez v. Wells Fargo Bank,*

12  *N.A.*, No. 17-CV-06003-JSC, 2018 WL 4849676, at *5 (N.D. Cal. Oct. 4, 2018).

13       **1. Citibank**

14       Citibank argues that § 2924.9 does not apply to Citibank because it is not a loan servicer.

15  (Doc. 10-1 at 8.) This is correct. Section 2924.9 only imposes obligations on a "mortgage

16  servicer." Cal. Civ. Code § 2924.9. A "mortgage servicer" is an "entity who directly services a

17  loan, or who is responsible for interacting with the borrower" and "managing the loan account on

18  a daily basis." Cal. Civ. Code § 2920.5. Plaintiffs explicitly state that Cenlar is the loan servicer

19  and Citibank is the beneficiary of the mortgage loan. (Doc. 1-4, ¶ 2.) Defendant Citibank's

20  motion to dismiss Count Three is **GRANTED** without leave to amend.

21       **2. Cenlar**

22       Cenlar argues that Plaintiffs cannot allege noncompliance with § 2924.9 "merely by

23  saying they did not receive anything." (Doc. 13-1 at 6.) To the contrary, Plaintiffs allege that

24  Cenlar failed to notify them of any foreclosure prevention alternatives within five business days

25  after the notice of default was recorded. (Doc. 1-4, ¶ 33.) Plaintiffs further allege that they were

26  living in the Property when the notice of default was recorded and "did not receive any phone

27  calls or phone messages, and did not receive any pieces of mail that referred to discussions about

28  alternatives to foreclosure before it was commenced." (Doc. 1-4, ¶ 34.)

7

1  Notwithstanding these allegations, Cenlar argues for dismissal of this claim with prejudice

2 because Plaintiffs fail to allege why their purported non-receipt of communications amounted to a

3 material violation.  (Doc. 13-1 at 11.)  Plaintiffs fail to directly respond to Cenlar's materiality

4 argument, but they argue in relation to the first cause of action that Cenlar failed to give Plaintiffs

5 any loss mitigation options after recording the notice of default.  (Doc. 18-1 at 12.)  Plaintiffs

6 argue that as a result, they "lost the chance to receive a loan modification that they would

7 otherwise have been eligible for" and they suffered harm because they "had to pay additional

8 interest & late charges and fees associated with inspection on the property which servicers

9 normally do every month and is standard procedure when foreclosure activity is initiated."  (Doc.

10 18-1 at 12.)  Plaintiffs allege that Cenlar failed to notify them via mail or messages of any

11 foreclosure prevention alternatives within five business days after the notice of default was

12 recorded, as required by § 2924.9.  (Doc. 1-4, ¶ 33.)  Furthermore, Plaintiffs allege that had they

13 received the contact and communication required under § 2924.9, "they would have taken action

14 to avoid the foreclosure of the Subject Property with other lending sources."  (Doc. 1-4, ¶ 34.)

15 Instead, Plaintiffs allege Defendant Cenlar foreclosed on the property and recorded the notice of

16 sale in September 2022.  (Doc. 1-4, ¶ 12.)

17  Two districts in California recently found indistinguishable allegations sufficiently alleged

18 a material violation of § 2924.9.  *See Warren v. PNC Bank Nat'l Ass.*, 671 F. Supp. 3d 1035,

19 1045 (N.D. Cal. Apr. 30, 2023) (plaintiff alleged the servicer did not contact him regarding

20 foreclosure alternatives before recording notice of default; this plausibly alleged a material

21 violation because he further alleged that such a communication would have caused him to take

22 action to avoid foreclosure); *Scott v. Cenlar FSB*, No. 2:23-CV-05473-SVW-MRW, 2023 WL

23 6881906, at *2 (C.D. Cal. Sep. 28, 2023) (plaintiff sufficiently alleged materiality by alleging that

24 if he had received required communication, he would have taken action to avoid foreclosure).

25 Plaintiffs' allegations plausibly demonstrate that their loan modification process was affected by

26 Cenlar's violation of § 2924.9 because Cenlar's lack of communication precluded Plaintiffs from

27 taking action through other lending sources.  (Doc. 1-4, ¶ 34.)  Therefore, the Court finds that

28 Plaintiffs have properly alleged a material violation of § 2924.9 by Cenlar. Cenlar's motion to

1    dismiss the third cause of action is **DENIED**.

2    **D.    Count Four: Negligence**

3          Plaintiffs' fourth cause of action alleges that Defendants were negligent in violating the

4    HBOR and thus, Defendants breached their duty of ordinary care and good faith.  (Doc. 1-4,

5    ¶ 37.)  A negligence claim has four elements: "(1) the defendant owed the plaintiff a legal duty,

6    (2) the defendant breached the duty, and (3) the breach proximately or legally caused (4) the

7    plaintiff's damages or injuries."  *Thomas v. Stenberg*, 206 Cal. App. 4th 654, 662 (2012).

8    Defendants move to dismiss the negligence claim on the grounds that they owed Plaintiffs no

9    duty of care.  (Docs. 10-1 at 16–17; 13-1 at 11–13.)  The Court agrees.

10         Under the economic loss doctrine, "[i]n general, there is no recovery in tort for negligently

11   inflicted 'purely economic losses,' meaning financial harm unaccompanied by physical or

12   property damage," when parties are in contractual privity.  *Sheen v. Wells Fargo Bank, N.A.*, 12

13   Cal. 5th 905, 922 (2022) (citation omitted).[2]  "[I]n the lender-borrower context," the "general

14   rule" is that a "financial institution owes no duty of care to a borrower when the institution's

15   involvement in the loan transaction does not exceed the scope of its conventional role as a mere

16   lender of money."  *Id.*  Thus, "when a borrower requests a loan modification, a lender owes no

17   tort duty sounding in general negligence principles to 'process, review and respond carefully and

18   completely to' the borrower's application."  *Id.* at 948.  Plaintiffs and Defendants are in

19   contractual privity, and the negligence claim arises from their lender-borrower relationship.

20   Accordingly, Defendants' motions to dismiss the negligence claim are **GRANTED** without leave

21   to amend as there does not appear to be any way to cure this defect.

22   **E.    Count Five: Wrongful Foreclosure**

23         In Count Four, Plaintiffs allege wrongful foreclosure—a common law tort claim "to set

24   aside a foreclosure sale, or an action for damages resulting from the sale, on the basis that the

25   foreclosure was improper."  *Sciarratta v. U.S. Bank Nat'l Assn.*, 247 Cal. App. 4th 552, 561

26   (2016).  The elements for wrongful foreclosure are: "(1) the trustee or mortgagee caused an

27   ─────────────────────

28   [2] *Sheen*, which was decided shortly after the opposition briefs were filed in this case, directly overruled *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941 (2014), a case relied upon extensively by Plaintiffs.

illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a

mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or

mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges

the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused

from tendering." *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 104 (2011).  Defendants

challenge Plaintiffs' wrongful foreclosure claim on each of the three elements.

      **1.   Illegal, Fraudulent, or Willfully Oppressive Trustee's Sale**

              **a.      Illegal Sale**

Defendants assert that the wrongful foreclosure claim necessarily fails because it is based

on allegations that Defendants violated California Civil Code §§ 2923.5, 2924(a)(1), 2934a(a)(1),

2924a(e), and 2924.9, which they contend are inadequately pled or fail as a matter of law.  (Docs.

10-1 at 17–18; 13-1 at 13–15.) Because Court dismissed Plaintiffs' first cause of action under

§ 2923.5 with prejudice and Plaintiffs withdrew their second cause of action under §§ 2924(a)(1),

2934a(a)(1), and 2924a(e), none of those theories of liability can form the basis for a wrongful

foreclosure based on an illegal sale.  However, because the Court finds that Plaintiffs sufficiently

alleged a claim under § 2924.9 against Cenlar, the Court will analyze the wrongful foreclosure by

illegal sale allegation in the context of this alleged § 2924.9 violation.

"[M]ere technical violations of the foreclosure process will not give rise to a tort claim;

the foreclosure must have been entirely unauthorized on the facts of the case." *Miles v. Deutsche

Bank Nat'l Tr. Co.*, 236 Cal. App. 4th 394, 409 (2015).  An alleged violation is a "mere technical

violation" unless the plaintiff can "show both that there was a failure to comply with the

procedural requirements for the foreclosure sale and that the irregularity prejudiced the plaintiff."

*Morris v. JPMorgan Chase Bank, N.A.*, 78 Cal. App. 5th 279, 294–95 (2022).  Because the Court

concludes that Plaintiffs have properly alleged a § 2924.9 violation and the resulting prejudice,

(Doc. 1-4, ¶ 34), Plaintiffs have alleged more than a mere technical violation.  Therefore, the

wrongful foreclosure by illegal sale claim can proceed against Cenlar.  *See Santana v. BSI Fin.

Servs., Inc.*, 495 F. Supp. 3d 926, 948 (S.D. Cal. 2020) (finding a properly alleged claim for

wrongful foreclosure based on a properly alleged statutory violation of a California Civil Code).

**b.      Fraudulent Sale**

It is possible that Plaintiffs are attempting to allege that both Defendants caused a fraudulent sale.  (*See* Doc. 1-4, ¶ 44 (alleging that Defendants "caused an illegal, fraudulent, or willfully oppressive sale of the Subject Property pursuant to a power of sale in a mortgage or deed of trust"); Docs. 18-1 at 19; 19-1 at 19 (arguing that "Defendant[s] willingly and maliciously recorded the notice of default so they could claim they were in default and thereafter file a fraudulent notice of sale," and that "Defendant[s] knew the house had equity and knew foreclosing on the property would quickly pay off the entire loan.")  However, the "fraudulent sale" prong of wrongful foreclosure is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *See Herrejon v. Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d 1186, 1203 (E.D. Cal. Nov. 1, 2013) (explaining that a claim for wrongful foreclosure is subject to the heightened pleading standard of Rule 9(b)).  Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  "Averments of fraud must be accompanied by the who, what, where, when, and how of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted).  Plaintiffs have not met the heightened pleading standards of Rule 9.

**2.  Prejudice or Harm to Plaintiffs**

Defendants further argue that Plaintiffs failed to plead facts demonstrating they were prejudiced or harmed by Defendants' violation of § 2924.9.  (Docs. 10-1 at 18; 13-1 at 14.)  Though Plaintiffs generally allege they "suffered prejudice or harm as a result of the wrongful foreclosure trustee sale," Plaintiffs "re-allege and incorporate all preceding paragraphs as though set forth fully" in the wrongful foreclosure cause of action.  (Doc. 1-4, ¶ 42.)  Because Plaintiffs sufficiently allege in preceding causes of action that they suffered harm, such as immediate damage to their credit and emotional and mental suffering due to Defendants' wrongful conduct, (Doc. 1-4, ¶ 29), the Court finds that Plaintiffs plausibly alleged they suffered harm as a result of Defendants' alleged wrongful foreclosure.

///

1          **3. Tender Rule**

2          Defendants also argue the wrongful foreclosure claim fails because Plaintiffs failed to

3    allege they tendered the full amount of the loan.  (Docs. 10-1 at 19–20; 13-1 at 14–15.)  "While

4    tendering is required and not excused, a plaintiff seeking to set aside an irregular sale must allege

5    tender of the full amount of the loan to maintain any cause of action that either is based on the

6    wrongful foreclosure allegations or seeks redress from that foreclosure." *Turner v. Seterus, Inc.*,

7    27 Cal. App. 5th 516, 525 (2018).  Plaintiffs do not allege they tendered the full amount of the

8    loan; rather, specifically allege they are "excused from the tender requirement because of

9    [Defendants] violations of Civ. Code § . . . 2924.9."  (Doc. 1-4, ¶ 46.)

10         The tender requirement may only be excused when, "(1) the underlying debt is void, (2)

11   the foreclosure sale or trustee's deed is void on its face, (3) a counterclaim offsets the amount

12   due, (4) specific circumstances make it inequitable to enforce the debt against a party challenging

13   the sale, or (5) the foreclosure sale has not yet occurred." *Chavez v. Indymac Mortgage Servs.*,

14   219 Cal. App. 4th 1052, 1062 (2013).  Furthermore, the mortgagor must establish that there was

15   no breach on the mortgagor's part that would have authorized the foreclosure.  *See Miles*, 236

16   Cal. App. 4th at 408–09.  Here, Plaintiffs only generally allege that the violations excuse them

17   from tendering the full amount of the loan.  (Doc. 1-4, ¶ 46.)  Plaintiffs provide no authority to

18   support the general allegation that a defendant's violation of § 2924.9 is an exception to the

19   tender rule under a claim for wrongful foreclosure.  Similarly, Plaintiffs do not allege that there

20   was no breach on their part that could have authorized Defendants' foreclosure of the Property.

21         A claim for wrongful foreclosure requires Plaintiffs to sufficiently allege each of the three

22   elements.  *See Lona*, 202 Cal. App. 4th at 104.  Although Plaintiffs have sufficiently alleged that

23   Cenlar allegedly violated § 2924.9, and that Plaintiffs were prejudiced from that alleged violation,

24   Plaintiffs' complaint fails to plead facts demonstrating they are excused from the tender rule. To

25   the extent they are attempting to allege wrongful foreclosure by fraudulent sale, Plaintiffs fail to

26   meet the heightened pleading standard for fraud under Rule 9(b).  Therefore, Plaintiffs have not

27   sufficiently plead facts on each element of wrongful foreclosure.  Because Plaintiffs have

28   requested leave to amend, and because it is possible that the complaint could be amended to cure

12

1  the deficiencies regarding fraud and the tender rule, Defendants' motions to dismiss the fifth

2  cause of action is **GRANTED** with leave to amend.

3  **F.      Count Six: Interpleader**

4        Count Six is a request that this Court "intervene by way of interpleader" to award

5  Plaintiffs "all surplus funds from the trustee's sale" of the disputed property pursuant to

6  California Code of Civil Procedure § 386.  (Doc 1-4, ¶ 59.)  Plaintiffs have indicated they will no

7  longer pursue this cause of action.  (Docs. 18-1 at 1; 19-1 at 1.)  The motion to dismiss Count Six

8  is **GRANTED** without leave to amend.

9  **G.      Count Seven: Unfair Business Practices**

10        Plaintiffs allege a violation of the UCL, which prohibits "unfair competition," which is

11  "any unlawful, unfair or fraudulent business act of practice."  Cal. Bus. & Prof. Code § 17200.

12  "A business act or practice may violate the UCL if it is either 'unlawful,' 'unfair,' or

13  'fraudulent,'" as "[e]ach of these three adjectives captures 'a separate and distinct theory of

14  liability.'"  *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010).  To plead a violation of

15  the "unlawful" prong, a plaintiff must plead a violation of another statute or common law.

16  *Shumake v. Caliber Home Loans, Inc.*, No. CV16-4296-CA(AGRX), 2017 WL 1362681, at *8

17  (C.D. Cal. Jan. 6, 2017).  To plead a violation of the "unfair" prong, a plaintiff must allege a

18  business practice that "'offends an established public policy' or is 'immoral, unethical,

19  oppressive, unscrupulous, or substantially injurious to consumers.'"  *McDonald v. Coldwell*

20  *Banker*, 543 F.3d 498, 506 (9th Cir. 2008) (quoting *People v. Casa Blanca Convalescent Homes,*

21  *Inc.*, 159 Cal. App. 3d 509, 530 (1984)).  To allege a violation of the "fraudulent" prong, "it is

22  only necessary to show that members of the public are likely to be deceived."  *Buller v. Sutter*

23  *Health*, 160 Cal. App. 4th 981, 986 (2008).  "The UCL, while broad in scope, is limited in

24  remedies.  Private individuals . . . may win restitution or injunctive relief, but they cannot obtain

25  damages or attorney fees."  *De La Torre v. CashCall, Inc.*, 5 Cal. 5th 966, 983 (2018) (citations

26  omitted).

27        Plaintiffs allege violations of the unfair, unlawful, and fraudulent prongs of the UCL

28  stemming from Defendants' HBOR violations and a violation of 15 U.S.C. § 1641(g).  (Doc. 1-4,

¶ 62.)  The state and federal law claims are addressed separately.

**1.  Plaintiffs' UCL Cause of Action Predicated on the HBOR Violations**

Plaintiffs allege that Defendants "violated the 'unfair,' 'unlawful,' and 'fraudulent' prongs of the UCL resulting in injury and economic loss to Plaintiffs when they purposefully violated Civ. Code §§ 2923.5, 2924(a)(1), 2934a(a)(1) and 2924.9."  (Doc. 1-4, ¶ 62.)  Plaintiffs further allege that this "unlawful and unfair conduct has caused substantial harm to Plaintiffs," including "actual, pecuniary injury of the loss of the equity in the value of the Subject Property, and the costs of seeking a remedy for [Defendants] wrongful actions."  (Doc. 1-4, ¶¶ 65, 68.)  Defendants argue that Plaintiffs' UCL claim should be dismissed on each prong.  (Docs. 10-1 at 21–24; 13-1 at 16.)

Defendants argue that Plaintiffs have not alleged any unlawful business practice because Plaintiffs have failed to properly state a claim for a violation of any law.  (Docs. 10-1 at 21–22; 13-1 at 16.)  However, the Court found above that Plaintiffs sufficiently alleged a § 2924.9 claim against Cenlar.[3]  Thus, Cenlar's motion to dismiss is **DENIED** as to the unlawful prong of the UCL, and Citibank's motion to dismiss this theory of liability is **GRANTED** without leave to amend.

Plaintiffs allege unfair conduct occurred, "resulting in injury and economic loss," because the "information provided to Plaintiffs was certainly misleading and not consistent as to the status of the loan modification and what [they] w[ere] supposed to do to satisfy the lender's demands."  (Doc. 1-4 at ¶¶ 63, 65–67.)  Plaintiffs attempt to clarify this unfair conduct in their opposition by stating that Defendants allegedly collected "various improper fees, costs and charges, that are either not legally due under the mortgage contract or California law, or that are in excess of amounts legally due," and Defendants "failed to send any written notifications as to any alternatives to foreclosure or make any calls in this regard even."  (Docs. 18-1 at 23; 19-1 at 23.)  Because Plaintiffs' statements in their opposition briefs are not in the complaint, this Court is

---

[3]  Because the Court has already dismissed Plaintiffs' §§ 2923.5 and 2924.9 (as to Citibank) claims, and Plaintiffs cease to pursue the §§ 2924(a)(1) and 2934a(a)(1) claims, the Court only addresses Plaintiffs' derivative § 2924.9 unlawful UCL claim against Cenlar.

1  unable to consider Plaintiffs' statements regarding the improper collection of fees. *See Susoeff v.*

2  *Pamulapati*, 2022 WL 256866, at *2 (E.D. Cal. Jan. 27, 2022).  In the complaint, Plaintiffs fail to

3  allege "with reasonable particularity the facts supporting the statutory elements" of the unfair

4  conduct violation and how the conduct was unfair such that it was substantially injurious. *See*

5  *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (1993); *see also McDonald*, 543

6  F.3d at 506.  Therefore, Defendants' motions to dismiss the unfair business practices prong of the

7  UCL are **GRANTED** with leave to amend.

8         Defendants also allege that Plaintiffs have insufficiently pled allegations of fraud under

9  the UCL.  (Docs. 10-1 at 23–24; 13-1 at 16.)  Claims brought under the UCL's fraud prong must

10  satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b).  *See Kearns v. Ford*

11  *Motor Co.*, 567 F.3d 1120, 112 (9th Cir. 2009).  Plaintiffs allege only that Defendants provided

12  information that "was certainly misleading and not consistent as to the status of the loan

13  modification."  (Doc. 1-4, ¶ 67.)  Plaintiffs have not alleged "the who, what, when, where, and

14  how" required under Rule 9(b).  *Vess*, 317 F.3d at 1106.  Defendants' motions to dismiss on the

15  fraud prong of the UCL are **GRANTED** with leave to amend.

16         **2.  Plaintiffs' UCL Cause of Action Predicated on a Violation of 15 U.S.C. § 1641(g)**

17         Consumer Credit Protection Act, 15 U.S.C. § 1641(g), provides that when a mortgage

18  loan is sold, transferred, or assigned to a third party, the new owner of the debt must notify the

19  borrower of certain information in writing within thirty days of the transfer.  A creditor that

20  violates § 1641(g) is liable for actual damages or specified statutory damages.  15 U.S.C.

21  § 1640(a)(1)–(2).

22         Citibank argues that Plaintiffs have not pled sufficient facts to state a claim under

23  § 1641(g).  (Doc. 10-1 at 22–23.)  Plaintiffs allege only that Defendants "fail[ed] to advise

24  homeowners in writing within 30 days that their Deed of Trust was transferred or assigned to a

25  third party, and that it is the new owner or assignee of the debt is illegal in violation of Title 15

26  U.S.C. § 1641(g)."  (Doc. 1-4, ¶ 64.)  It appears that Plaintiffs base this argument on an alleged

27  assignment of the deed of trust, which they claim triggered Defendants' disclosure obligations

28  under § 1641(g).  (Doc. 1-4, ¶ 64.)  However, the § 1641(g) notice requirements apply only when

a mortgage loan—not a deed of trust—is transferred or assigned to a third party. *See Cheatham v. Real Time Resolutions, Inc.*, No. 2:19-CV-08911-RGK-JPR, 2020 WL 1000606, at *3 (C.D. Cal. Jan 7, 2020) (holding plaintiff insufficiently pled a § 1641(g) claim when plaintiff simply pled that the defendant failed to notify her of the assignment of the deed of trust). Therefore, without an allegation that Defendants—as the new owner or assignee of Plaintiffs' mortgage loan—failed to notify Plaintiffs in writing of the transfer or assignment, the Court finds that Plaintiffs have not sufficiently pled a claim for a violation of 15 U.S.C. § 1641(g). Thus, Defendants' motions to dismiss Plaintiffs' claim for a violation of 15 U.S.C. § 1641(g) is **GRANTED** with leave to amend.

**H.     Count Eight: Cancellation of Written Instruments**

Plaintiffs seek cancellation of the recorded notice of default, notice of trustee's sale, and trustee's deed upon sale. (Doc. 1-4, ¶ 72.) Under California Civil Code § 3412, a court may order the cancellation of a written instrument if "there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable." To obtain cancellation of an instrument, a plaintiff "must show that he will be injured or prejudiced if the instrument is not cancelled, and that such instrument is void or voidable." *Zendejas v. GMAC Wholesale Mortg. Corp.*, No. 1:10-CV-0184-OWW-GSA, 2010 WL 2629899, at *7 (E.D. Cal. June 29, 2010). A plaintiff must allege "facts, 'not mere conclusions, showing the apparent validity of the instrument designated, and point out the reason for asserting that it is actually invalid.'" *Santana v. BSI Fin. Servs., Inc.*, 495 F. Supp. 3d 926, 950 (S.D. Cal. 2020) (quoting *Ephraim v. Metro Tr. Co. of Cal.*, 28 Cal. 2d 824, 833 (1946)). "Cancellation of an instrument is essentially a request for rescission of the instrument." *Deutsche Bank Nat'l Tr. Co. v. Pyle*, 13 Cal. App. 5th 513, 523 (2017).

Plaintiffs' complaint alleges that they have "reasonable belief" that the notice of default, notice of trustee's sale, and trustee's deed upon sale are void or void ab initio. (Doc. 1-4, ¶ 72.) However, Plaintiffs fail to plead any facts to support the allegation that the instruments are void or voidable as required under § 3412. *See Zendejas*, 2010 WL 262899, at *7 (holding that merely indicating that the instruments were void or voidable without explaining why was insufficient for

an allegation under § 3412).  Rather, Plaintiffs merely reiterate that the instruments were "illicit recordings" and that "the disparaging instruments were intended to affect Plaintiffs and their home."  (Docs. 18-1 at 24; 19-1 at 24.)  Because Plaintiffs fail to demonstrate how the instruments are "voidable or void ab initio" and would cause "serious injury" if not canceled, the Court grants Defendants' motions to dismiss Count Eight with leave to amend.

**CONCLUSION**

For the reasons set forth above:

1.  Defendants' requests for judicial notice are **GRANTED.**

2.  Defendants' motions to dismiss Plaintiffs' first, second, fourth, and sixth causes of action are **GRANTED** without leave to amend.

3.  Defendants' motions to dismiss Plaintiffs' third cause of action are granted in part and denied in part as follows:

    a.  Defendant Citibank's motion to dismiss Plaintiffs' third cause of action is **GRANTED** without leave to amend; and

    b.  Defendant Cenlar's motion to dismiss Plaintiffs' third cause of action is **DENIED.**

4.  Defendants' motions to dismiss Plaintiffs' fifth and eighth causes of action are **GRANTED** with leave to amend.

5.  Defendants' motions to dismiss Plaintiffs' seventh cause of action are granted in part and denied in part as follows:

    a.  Defendant Citibank's motion to dismiss Plaintiffs' unlawful prong of the UCL cause of action is **GRANTED** without leave to amend.

    b.  Defendant Cenlar's motion to dismiss Plaintiffs' unlawful prong of the UCL cause of action is **DENIED**.

    c.  Defendants' motions to dismiss Plaintiffs' unfair prong of the UCL cause of action is **GRANTED** with leave to amend.

    d.  Defendants' motion to dismiss Plaintiffs' fraud prong of the UCL cause of action is **GRANTED** with leave to amend; and

17

e.  Defendants' motion to dismiss Plaintiffs' 15 U.S.C. § 1641(g) cause of

action is **GRANTED** with leave to amend.

IT IS SO ORDERED.

Dated:   **September 4, 2024**

UNITED STATES DISTRICT JUDGE

18